IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

AUDREY MICHAEL,
    Plaintiff,

v.                                                                               Civil Action No. 3:21cv764

VIRGINIA DEPARTMENT
OF TRANSPORTATION,
    Defendant.

## OPINION

Audrey Michael started working for the Virginia Department of Transportation ("VDOT") in 2015. Four years later, her management team changed. After Michael took disability-related leave, the new management team stripped her of most of her prior job duties, made condescending comments to her in meetings, and placed her on a performance improvement plan. Meanwhile, Michael discovered that two of her male coworkers earned substantially higher salaries than she did.

Michael now sues VDOT for retaliation, imposing a hostile work environment based on her disability, and failure to accommodate under the Rehabilitation Act and the Americans with Disabilities Act ("ADA"), (Counts I and II),[1] and for sex-based discrimination and unequal pay under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Equal Pay Act, (Counts III and IV).

The Court will grant VDOT's motion to dismiss as to all of Michael's claims. First, Michael fails to plausibly allege that VDOT regarded her as having a disability, that her managers' treatment was sufficiently severe or pervasive, that VDOT took an adverse action, and that

---

[1] The Court refers to Michael's Rehabilitation Act retaliation claim as Count I.A, her Rehabilitation Act hostile work environment claim as Count I.B, and her Rehabilitation Act failure to accommodate claim as Count I.C.

VDOT failed to accommodate her disability. The Court will thus grant VDOT's motion to dismiss Count I. The Court will also grant VDOT's motion to dismiss Count II because sovereign immunity protects VDOT against claims brought under Title I of the ADA.

The Court will grant VDOT's motion to dismiss Michael's Title VII discrimination and retaliation claims because she has not alleged that VDOT took an adverse action. Finally, the Court will grant VDOT's motion to dismiss Michael's Title VII wage discrimination and Equal Pay Act claims because she fails to plausibly allege that she held a role similar to her identified male comparators.

## I. FACTS ALLEGED IN THE COMPLAINT[2]

Michael, a female, African-American veteran, started working for VDOT in 2015 as a Senior Policy Analyst in VDOT's Governance and Legislative Affairs ("GALA") Division. (ECF No. 1-1 ¶¶ 1, 3.) For several years, she performed myriad job duties including maintaining data, researching governance documents, reviewing bills, resolutions, delegations, and briefs, completing annual guidance documents, attending training, and completing "other special projects." (*Id.* ¶ 11.)

In 2017, VDOT "granted a workplace accommodation for [Michael's] disability related to her military service." (*Id.* ¶ 12.) At some point in 2018, Michael found out that two of her male co-workers "who had the same title of Senior Policy Analyst, . . . reported to the same su-

---

[2] The Court does not consider any new facts Michael asserts in her response brief because "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Weakley v. Homeland Sec. Sols., Inc*, No. 3:14cv785, 2015 WL 11112158, *5 (E.D. Va. May 19, 2015), *report and recommendation adopted sub nom. Weakley v. Homeland Sec. Sols., Inc.*, No. 3:14cv785, 2015 WL 11112159 (E.D. Va. June 16, 2015), *aff'd*, 622 F. App'x 253 (4th Cir. 2015) (quoting *Marsh v. Virginia Dept. of Transp.*, No. 6:14cv6, 2014 WL 6833927, at *8 (W.D. Va. Dec. 3, 2014)).

pervisor in the same line of command in the GALA Division," and "performed the same duties" as Michael made $21,000 and $23,000 more than her per year. (*Id.* ¶¶ 13, 18.)

Between May 2018 and September 2018, Jo Ann Maxwell—the GALA Division Administrator—directly supervised Michael. (*Id.* ¶ 10.) In September 2018, Steven Jack became Michael's supervisor. (*Id.* ¶ 9.) During Michael's November 2018 performance evaluation, Jack gave Michael a "good" review and did not mention any "significant work deficiencies." (*Id.* ¶ 14.) That same month, Michael complained to Jack about the pay disparity between her and her male coworkers. (*Id.* ¶ 15.) Jack said "he would look into it, but he did not." (*Id.*) In December 2018, Michael raised her pay disparity complaint with Human Resources. (*Id.*) Human Resources met with Michael in January 2019 and advised her to file a grievance, which she did. (*Id.* ¶ 16.)

That same month, Maxwell told staff that VDOT would not approve leave from January until March, "arguably the busiest time of the year for the GALA team." (*Id.* ¶ 19.) On January 14, 2019, about six days after Maxwell's announcement, Michael "was sent out of work on short-term disability . . . at the insistence of her doctors." (*Id.* ¶ 20.) She returned to work on March 18, 2019. (*Id.* ¶ 21.)

When she returned to work, Jack "singled out" Michael from her male coworkers. (*Id.* ¶¶ 22–23.) Unlike meetings Jack scheduled with her male coworkers, Jack met with Michael only in Maxwell's presence because "there was an issue of having a male and a female in a room alone." (*Id.* ¶ 23(a).) On May 3, 2019, Jack scheduled a meeting with Michael to "intimidate[] her" and "try and place her on a performance improvement plan." (*Id.* ¶ 23(b).) During the meeting, Jack and Maxwell gave Michael a folder with "one document in it" to "pro[ve her]

3

work issues." (*Id.*) The meeting caused Michael to "ha[ve] an anxiety attack and melt down related to her disability." (*Id.*)

Jack and Maxwell also took other actions that affected Michael but not her male coworkers. They tracked when Michael left her cubicle to use the restroom or take a break; "monitor[ed] [her] emails, internet use and phone use; gave her incorrect directions; discarded her "work-related print jobs"; refused to acknowledge Michael during meetings; "scrutinized all work efforts and training that . . . Michael advised them of" and "tr[ied] to find something wrong with" the work Michael provided; refused to give Michael the instructions and guidance she requested when performing new tasks; ignored her messages; required her to use leave to "attend a VDOT represented event" even though other VDOT employees did not have to; wrote her, but not her coworkers, up for having problems and concerns about a project; and changed instructions for projects without telling her. (*Id.* ¶¶ 23(c)–(n), 24(a), (c)–(d), 25–30, 45.) Further, on one occasion Jack "became so hostile and argumentative with . . . Michael" that Tiffany Shearin, a Human Resources representative, "had to ask [him] to stop with the demeaning talk and be respectful." (*Id.* ¶ 24(b).)

In addition, Michael's job duties changed when she returned from her disability-related leave. Without explanation, her job no longer included many of her previous responsibilities, to include bill, resolution, delegation, and brief review, data maintenance, and training participation. (*Id.* ¶¶ 36(a)–(o).) These actions "adversely affected . . . Michael's mindset, mental health, work environment, and ability to work." (*Id.* ¶ 39.)

Michael "was again on short-term disability in January . . . 2020." (*Id.* ¶ 40.) When she returned to work, Jack asked a Human Resources representative to participate in his meetings with Michael "due to all that had happened between them." (*Id.* ¶ 41.) Jack and Shearin held a

4

meeting with Michael on February 21, 2020, during which Jack assigned Michael "the baseline regulatory catalog," which "was an extremely large project." (*Id.* ¶ 46.) Despite the size of this project, Jack forbade Michael from asking anyone questions except him. (*Id.*) In April, Shearin reiterated this command to Michael after learning that Michael had talked to an employee in another department about the project. (*Id.*)

Starting in March 2019, Michael "repeatedly requested [to] transfer, but was denied transfer to a different department for over a year." (*Id.* ¶ 47.) VDOT claims "that there were no positions available," but VDOT included in its search for a position "less than one-fourth of the agency." (*Id.* ¶ 66.)

Michael ultimately filed grievances with VDOT Human Resources and the state's Office of Civil Rights due to the "bullying and intimidation" she faced. (*Id.* ¶ 48–49.) She also filed a charge of race discrimination, disability discrimination, and retaliation with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 103.) The EEOC issued a right to sue letter on August 14, 2020. Michael filed this suit in the Richmond Circuit Court on November 19, 2020.

## II. DISCUSSION[3]

### *A. Timeliness (Counts II (ADA) & III (Title VII))*

Both Title VII and the ADA require that a plaintiff file any lawsuit within ninety days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a). This ninety-day period operates like a statute of limitations, and "[a] claimant who fails to file a complaint within the ninety-day statutory time period . . . generally forfeits his right to pursue his claims." *Mann v. Standard Motor Prods., Inc.*, 532 F. App'x 417, 418 (4th Cir. 2013).

In general, "a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Although the Court typically cannot resolve the merits of an affirmative defense based on the complaint alone, in "rare circumstances," a complaint may provide sufficient facts for it to rule on a statute of limitations question in a 12(b)(6) motion to dismiss. *Id.*; *see Ott v. Md. Dep't*

---

[3] VDOT moves to dismiss Michael's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction. The plaintiff bears the burden of proving proper subject matter jurisdiction as the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

A Rule 12(b)(6) motion gauges a complaint's sufficiency without resolving any factual discrepancies or testing the claims' merits. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a facially plausible claim to relief. *Id.* Even though a plaintiff like Michael must ultimately proceed under the *McDonnell Douglas* burden-shifting framework, *see, e.g.*, *Reyazuddin v. Montgomery County*, 789 F.3d 407, 419 (4th Cir. 2015), at the pleading stage she need only present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)).

*of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) ("A court may dismiss a complaint on statute of limitations grounds 'if the time bar is apparent on the face of the complaint.'").

No such "rare circumstances" exist here. The EEOC issued Michael's right-to-sue letter on August 14, 2020, and Michael filed this action ninety-seven days later. But the complaint does not allege when Michael received the notice. Although "[t]he Fourth Circuit has not adopted an 'actual receipt' rule" for notice, *West v. CSX Corp.*, No. 05-3256, 2006 WL 373843, at *2 (D. Md. Feb. 16, 2006), the currently empty record does not give the Court any basis to evaluate when the limitations period began or whether any circumstances would have equitably tolled Michael's filing period, *see also Prosa v. Austin*, No. 20-3015, 2022 WL 394465, at *17 (D. Md. Feb. 8, 2022) (explaining that the "presumptions" regarding receipt of a right-to-sue letter "are not 'irrebuttable'" (quoting *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996)). The Court will thus deny VDOT's motion to dismiss on these grounds.

### *B. Sovereign Immunity (Count II (ADA))*[4]

"As a general rule, the Commonwealth is immune both from actions at law for damages and from suits in equity to restrain governmental action or to compel such action." *All. to Save the Mattaponi v. Commonwealth, Dep't of Env't Quality ex rel. State Water Control Bd.*, 270 Va. 423, 455, 621 S.E.2d 78, 96 (2005) (quoting *Hinchey v. Ogden*, 226 Va. 234, 239, 307 S.E.2d

---

[4] Sovereign immunity does not protect VDOT from Michael's Rehabilitation Act, Title VII, or Equal Pay Act claims. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 491 (4th Cir. 2005) (finding that the defendant "waived whatever Eleventh Amendment immunity it had when it accepted federal funds under [the Rehabilitation Act,] a statute that clearly and unambiguously conditioned receipt of such funds on a waiver of immunity"); *Savage v. Maryland*, 896 F.3d 260, 275 (4th Cir. 2018) ("Title VII . . . abrogates [Eleventh Amendment] immunity for suits against a state in its capacity "as employer." (quoting Fitzpatrick v. Bitzer, 427 U.S. 445, 452 (1976))); *Usery v. Charleston Cnty. Sch. Dist. of Charleston Cnty.*, 558 F.2d 1169, 1171 (4th Cir. 1977) (finding that "application of [the Equal Pay Act's] provisions to state and local governments is a valid exercise of Congress' constitutional authority").

891, 894 (1983)). As an instrumentality of the state, the doctrine of sovereign immunity generally protects VDOT from private suits. *Marsh v. Va. Dep't of Transp.*, No. 6:14cv6, 2014 WL 2712157, at *2 (W.D. Va. June 16, 2014) (quoting *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997)); *see also* Va. Code § 33.2-256.

"A claim against a state agency in federal court may overcome state sovereign immunity in three ways: (1) Congress abrogating state immunity; (2) a state expressly consenting to suit or waiving its immunity; or (3) a plaintiff seeking only prospective or injunctive relief against a state agent." *Jones v. Va. Commonwealth Univ.*, No. 3:20cv792, 2021 WL 51542, at *3 (E.D. Va. Jan. 6, 2021).

For Title I of the ADA, "the Supreme Court has held that Congress exceeded its authority" when it attempted to abrogate state sovereign immunity. *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019). The first sovereign immunity exception thus does not apply to Michael's ADA claim. Nor does the second exception apply because Virginia "has not waived its sovereign immunity from private lawsuits under Title I of the ADA in either state or federal court." *Id.* at 248. Finally, the third exception—also known as the *Ex parte Young* exception—"has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Because Michael sues VDOT, a state agency, *Ex parte Young* does not save her ADA claim. The Court will grant VDOT's motion to dismiss Count II.[5]

---

[5] Even if sovereign immunity did not bar Michael's ADA claim, it would fail on several other grounds. *See, e.g., infra* Parts II.C.1, II.C.3, II.E; *see also infra* note 7.

### *C. Failure to State a Claim (Counts I.B–C (Rehabilitation Act))*

Michael sues VDOT under the Rehabilitation Act because VDOT created a hostile work environment when it refused to train her, removed her job duties, refused to transfer her to a different department, and, generally, "set[] her up for failure" because of her actual or perceived disability. (ECF No. 1-1 ¶ 69.)[6] She also sues VDOT for failure to accommodate under the Act. (ECF No. 1-1 ¶ 69.)

#### *1. Disability (Count I.B)*

For a discrimination claim under the Rehabilitation Act, Michael must show "(1) she is disabled; (2) she was a qualified individual; and (3) she suffered an adverse employment action based on her disability." *Laird v. Fairfax County*, 978 F.3d 887, 892 n.4 (4th Cir. 2020).[7] A "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(B); *see* 29 U.S.C. § 794(a); *id.* § 705(20)(B).

---

[6] In the grievances Michael filed with VDOT, Michael asked "that she be allowed to work in a civil work environment." (*Id.* ¶ 49.) She says VDOT ultimately "ignored the significance of the civility in the workplace issue." (*Id.* ¶ 54.) As a result, Michael now says that VDOT violated the Rehabilitation Act when it "dispos[ed] of her complaint . . . without addressing the [documented] abusive treatment." (*Id.* ¶ 70.) Specifically, she claims that VDOT "failed to provide . . . an appropriate investigation of the civility issue in the workplace." (*Id.* ¶ 63.)

Despite Michael's claims of error at the agency level, the section of the VDOT investigative report that Michael quotes recognizes that workplace harassment *can* rise to the level of an adverse employment action. (*Id.* ¶ 58.) Further, Michael's disagreement with VDOT's ultimate denial of her claims does not on its own state a claim under Title VII. To the extent Michael intended to appeal VDOT's findings, the Virginia state courts provided an avenue for doing so. *See, e.g., Va. Dep't of Transp. v. Stevens*, 53 Va. App. 654, 658, 674 S.E.2d 563, 565 (2009); *see also* Va. Code § 2.2-3006(B).

[7] "[D]espite the different language [the ADA and the Rehabilitation Act] employ, they require a plaintiff to demonstrate the same elements to establish liability." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012).

9

Here, Michael does not allege any facts to show that she has a disability as the Rehabilitation Act defines that term. Though Michael mechanically recites the legal requirements and standards for a disability,[8] none of these conclusory statements allow the Court to determine whether the physical impairment she alleges "substantially limits one or more [of her] major life activities" or whether she has "a record of such an impairment." 42 U.S.C. § 12102(1)(A)–(B); *see also Iqbal*, 556 U.S. at 678.

For the third definition of a disability, a person is "regarded as" having such an impairment if she "establishes that . . . she has been subjected to an action prohibited under [the Rehabilitation Act] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity," unless the impairment has "an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3). Unlike the definition for *having* a disability, this definition does not require the Court to determine the extent of Michael's actual alleged disability.

Michael still fails, however, to plausibly allege that VDOT perceived Michael as having a disability that substantially limits a major life activity. *See Wilson v. Phoenix Specialty Mfg. Co.*, 513 F.3d 378, 385 (4th Cir. 2008). The sparse facts supporting VDOT's perception of her disability include that VDOT "granted a workplace accommodation for her disability," (ECF No. 1-1 ¶ 12); Michael twice took short-term disability leave while working for VDOT, (*id.* ¶¶ 20, 40); and Michael "had an anxiety attack and melt down related to her disability" during a meeting with her supervisor, (*id.* ¶ 23(b)). Though these statements show that VDOT provided accommodations for Michael, they do not identify what standards VDOT relied on in making these de-

---

[8] Michael "has a recognized disability," (ECF No. 1-1 ¶ 3); Michael "is . . . a qualified individual with a disability," (*id.* ¶ 68; *see also id.* ¶ 80); and her "disability . . . substantially limits on or more of her major life activities and/or major bodily functions," (*id.* ¶ 69).

terminations, explain what VDOT knew, if anything, about Michael's disability, or show that VDOT ever considered Michael's ability to perform a major life activity.[9] The factual deficiencies in Michael's complaint render it impossible for the Court to find that VDOT perceived Michael as having a disability that substantially limits a major life activity. Because Michael has not plausibly alleged that she has a disability covered by the Act, the Court will grant VDOT's motion to dismiss Michael's Rehabilitation Act discrimination claim.[10]

### 2. *Hostile Work Environment (Count I.B)*

Even if Michael plausibly alleged that she had a disability, the Court would dismiss her hostile work environment claim because the facts do not show that Jack's and Maxwell's unwelcome behavior "was 'sufficiently severe or pervasive.'" *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009) (quoting *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 338 (4th Cir. 2003)).

For a hostile work environment claim, Michael must show that VDOT's conduct (1) "was [subjectively] unwelcome"; (2) "resulted because of her gender, disability, or prior protected activity"; (3) "was 'sufficiently severe or pervasive' to alter the conditions of her employment"; and (4) "was imputable to her employer." *Id.* (quoting *Ocheltree*, 335 F.3d at 338).

Even if the Court assumed, based on the temporal proximity between Michael's disability-related leave and the alleged harassment, that she would not have faced the alleged harass-

---

[9] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

[10] Michael also brings a retaliation claim under the Rehabilitation Act. (ECF No. 1-1 ¶ 69.) Because "[a] retaliation claim 'does not require that the claimant be disabled,'" the Court will address the merits of her retaliation claim in Part II.E, *infra. Peeples v. Coastal Off. Prod., Inc.*, 203 F. Supp. 2d 432, 465 (D. Md. 2002), *aff'd*, 64 F. App'x 860 (4th Cir. 2003).

11

ment "but for" her disability,[11] Michael fails to adequately allege that the harassment was severe and pervasive. "[H]arassment is considered sufficiently severe or pervasive to alter the terms or conditions of the employment if a workplace is 'permeated with discriminatory intimidation, ridicule, and insult.'" *Pueschel*, 577 F.3d at 565 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). By design, this demanding standard "filter[s] out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The plaintiff must thus show that "a reasonable person could perceive [her workplace environment] to be objectively hostile . . . [based on] 'the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Bell v. Shulkin*, 709 F. App'x 167, 170 (4th Cir. 2017) (quoting *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011)).

Here, Michael says that Jack would meet with her only if a female was present and that he and Maxwell monitored her movements, messages, and calls; Jack did not provide instructions or, when he did, gave insufficient or incorrect directions; Jack did not respond to Michael's messages; Maxwell threw out her print job; and, on at least one occasion, Jack was argumentative and hostile toward her in a meeting.

Many of these allegations, including Jack's decision to closely monitor Michael's work or to require that she seek help only from him, reflect the "managerial discretion" that should

---

[11] Michael's disability must constitute a "but for" cause of the unwelcome activity. *Id.* (quoting *Jennings v. Univ. of N.C.*, 482 F.3d 686, 723 (4th Cir. 2007) (Niemeyer, J., dissenting). Here, VDOT granted Michael a workplace accommodation "for her disability" in 2017. (ECF No. 1-1 ¶ 12.) "[T]he day to day harassment began," though, after she returned from short-term disability leave in March 2019, and continued after she returned from short-term disability leave in February 2020. (*Id.* ¶¶ 23, 44.)

remain free from "undue federal interference." *Johnson v. Transp. Agency, Santa Clara Cnty.*, 480 U.S. 616, 645 (1987) (Stevens, J., concurring) (quoting *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. Cleveland*, 478 U.S. 501, 519 (1986)); *see also Webster v. Johnson*, 126 F. App'x 583, 587 (4th Cir. 2005) (finding that the plaintiff did not present evidence of a hostile work environment even though his boss "may well have been a strict supervisor"). Other allegations reflect what this Court would characterize as poor but unfortunately common management practices: unresponsiveness, unwillingness or inability to provide instructions, and failure to provide training.

Some of Michael's other allegations, though, constitute abusive behavior. These include Maxwell's decision to arbitrarily throw out Michael's print job, Jack's argumentative, hostile behavior toward Michael during one of Michael's meetings with Jack and Shearin, and Maxwell's and Jack's "condescending statements" during other meetings. But the first and second examples serve as isolated instances, and Michael does not provide any additional information about the content or frequency of Maxwell's and Jack's condescending statements.[12] The Court finds that Michael has not plausibly alleged that she faced severe and pervasive harassment under the totality of the circumstances and will grant VDOT's motion to dismiss her hostile work environment claim under the Rehabilitation Act.[13]

---

[12] Although Michael says that these actions affected her "mindset, mental health, work environment, and ability to work," (ECF No. 1-1 ¶ 39), the Court must evaluate the pervasiveness of VDOT's actions "based on a 'reasonable person' standard." *Pueschel*, 577 F.3d at 565 (quoting *Harris*, 510 U.S. at 21).

[13] Any hostile work environment claim under Title VII would also fail for these reasons. *See id.* (applying the same hostile work environment standard under both the Rehabilitation Act and Title VII).

### *3. Failure to Accommodate (Count I.C)*

Michael also brings a failure to accommodate claim under the ADA. As explained in Part II.B, *supra*, though, sovereign immunity protects VDOT against this claim. Further, even if the Court evaluated Michael's failure to accommodate claim under the Rehabilitation Act, it still fails.

"To establish a prima facie claim of failure to accommodate under the Rehabilitation Act, a plaintiff must demonstrate that (1) she was a qualified person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer nonetheless refused to make the accommodation." *Hannah P. v. Coats*, 916 F.3d 327, 337 (4th Cir. 2019).

As a threshold matter, Michael has not plausibly alleged that she has a disability under the Rehabilitation Act. *See supra* Part II.C.1. Even if she did, though, her claim would fail because she has not plausibly alleged that VDOT refused to provide an accommodation.

Michael says that VDOT "granted a workplace accommodation for her disability" in 2017. (ECF No. 1-1 ¶ 12.) But she later claims, without any supporting facts, that VDOT did not make "reasonable accommodations for [her] known physical limitations." (*Id.* ¶ 80.)[14] Mi-

---

[14] Michael does say that she requested to transfer to a different department. She does not allege, however, that she requested a transfer *because of* her disability. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013) ("The duty to engage in an interactive process to identify a reasonable accommodation is generally triggered when an employee communicates to his employer . . . his desire for an accommodation *for [his] disability*." (emphasis added)). Rather, she ties this transfer request to the incivility she faced in the workplace. (ECF No. 1-1 ¶¶ 63, 64.)

Even if the Court assumed that Michael requested, and VDOT refused, a transfer to a different department based on Michael's disability, *see* 42 U.S.C. § 12111(9) (including "reassignment to a vacant position" as a potential reasonable accommodation), Michael has not identified any position that would have made this accommodation possible. *Wilson*, 717 F.3d at 347 ("[A]n employer who fails to engage in the interactive process will not be held liable if the em-

chael fails to bridge the factual gap between VDOT's grant of an accommodation and its subsequent refusal to provide one, and the Court will not credit her subsequent, unsupported conclusory allegation of VDOT's refusal. *Iqbal*, 556 U.S. at 678.

### ***D. Failure to Exhaust Administrative Remedies (Count III (Title VII))***

VDOT says that Michael failed to exhaust her administrative remedies under Title VII because her EEOC claim alleged only "racial discrimination, disability discrimination, and retaliation." (ECF No. 4, at 17–18.)[15]

Typically, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012) (omission in original) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)). This results in a procedural bar "when the claims in [a plaintiff's] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative charge.'" *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (second alteration in original) (quoting *Chacko*, 429 F.3d at 508–10).[16] This framework provides some flexibility, however, for "hapless plaintiffs" who might otherwise fall victim to "overly technical concerns." *Sydnor*, 681 F.3d at 594. Thus, "so long as 'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investi-

---

ployee cannot identify a reasonable accommodation that would have been possible."). Thus, her claim would still fail.

[15] Michael responds that she "included a claim of sexual discrimination in her EEOC Complaint (via Virginia Division of Human Rights)." (ECF No. 6, at 7.) The Court will not, however, consider facts not alleged in the complaint. *See supra* note 2.

[16] *But see Fort Bend County v. Davis*, 139 S. Ct. 1843, 1846 (2019) (holding that Title VII's administrative exhaustion requirement does not constitute a jurisdictional requirement).

15

gation,' she 'may advance such claims in her subsequent civil suit.'" *Id.* (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)).

Each of Michael's claims in this suit stems from essentially the same set of facts. Because these facts provided VDOT the requisite notice furthered by Title VII's administrative exhaustion requirement, the Court will not dismiss Count III for failure to exhaust administrative remedies even if Michael did not include a sex discrimination claim in her EEOC complaint.[17]

### *E. Failure to State a Claim (Counts I.A (Rehabilitation Act) and III (Title VII))*

VDOT argues that Michael's retaliation and discrimination claims fail because she has not plausibly alleged that VDOT took an adverse action. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021); *Vanyan v. Hagel*, 9 F. Supp. 3d 629, 641 (E.D. Va. 2014) (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). "An adverse employment action is a discriminatory act that "adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland*, 487 F.3d at 219 (alteration in original) (quoting *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Although "[w]hat qualifies as an 'adverse action' differs slightly depending on whether the claim is for unlawful discrimination or retaliation," "both claims share a common element: an *adverse* action, meaning some action that results in some significant detriment to the employee. *Laird*, 978 F.3d at 893 (emphasis and alteration in original) (quoting *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015)) (cleaned up).[18]

---

[17] *But see supra* note 15.

[18] The difference between the narrower discrimination and broader retaliation definitions of an adverse action does not affect the Court's analysis here because Michael's allegations all arise from her employment. *Cf. also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62, 67 (2006) (finding that Title VII's substantive antidiscrimination provision applies only "to actions that affect employment or alter the conditions of the workplace," but that the antiretalia-

Here, Michael alleges that Jack required her to perform unfamiliar tasks, placed her on a performance plan, and made her participate in supervisory meetings with both Jack and Maxwell or Jack and Shearin. The Court finds that these types of actions do not reflect changes in the condition of Michael's employment, but rather actions an employer might take in hopes of adjusting an employee's behavior, improving an employee's performance, or allowing an employee to professionally develop through the assignment of new tasks. Standing alone—that is, absent a subsequent termination or demotion based on these actions—none of these allegations constitute a materially adverse action. *See, e.g., Michael v. Va. Commonwealth Univ.*, No. 3:18cv125, 2019 WL 128236, at *4 (E.D. Va. Jan. 8, 2019).

Michael also alleges that, after she returned from disability-related leave in 2019, VDOT stripped her of all but two of her fifteen job responsibilities "without explanation." (ECF No. 1-1 ¶ 36.)[19] Though this significant change in her job responsibilities could certainly constitute an adverse action, *Jones-Davidson v. Prince George's Cnty. Cmty. Coll.*, No. 13cv2284, 2013 WL 5964463, at *4 (D. Md. Nov. 7, 2013) ("[A]ny change in job responsibilities must be substantial in order to rise to the level of adverse employment action."), Michael has not alleged that the change "impeded her ability to advance, or had any tangible impact on her career," *id.* (quoting *Bailey v. Ares Grp., Inc.*, 803 F. Supp. 2d 349, 357 (D. Md. 2011)). And although VDOT took away many of Michael's prior job responsibilities, it apparently coupled this modification with new projects and assignments, including one "extremely large project" that presumably required

---

tion provision "extends beyond workplace-related or employment-related retaliatory acts and harm").

[19] Because Michael does not offer an explanation for VDOT's actions, the Court cannot infer a link between the actions described above and these changes to Michael's job responsibilities.

17

much of Michael's time. (*See, e.g.*, ECF No. 1-1 ¶ 46 (explaining that the new project "should have been a joint assignment for 5 people".)

Because Michael fails to plausibly allege that she suffered an adverse action, her retaliation and discrimination claims fail.

***F. Failure to State a Claim for Unequal Pay (Counts III (Title VII) and IV (Equal Pay Act))***

For her sex-based wage discrimination claim under Title VII, Michael must show "that she is female, i.e., a member of a protected class, and that the job she occupied was similar to higher paying jobs occupied by males." *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 343 (4th Cir. 1994). "Under the disparate treatment model of a Title VII action, 'there is a relaxed standard of similarity between male and female-occupied jobs, but a plaintiff has the [ultimate] burden of proving an intent to discriminate on the basis of sex.'" *Id.* (alteration in original) (quoting *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir. 1992)). The Equal Pay Act imposes a similar, yet slightly stricter requirement: "[a] plaintiff must show that an employer has paid different wages to employees of opposite sexes for equal work in jobs which require equal skill, effort and responsibility and which are performed under similar working conditions." *Id.*; *Spencer v. Va. State Univ.*, 224 F. Supp. 3d 449, 458 (E.D. Va. 2016).

Here, Michael alleges that her two male coworkers with the same title, supervisor, work responsibilities, and working conditions made more than $20,000 per year more than she did. But her allegations about her comparators' similar work conditions strike the Court as recitations of the legal requirements for her claim, and Michael does not provide any details about her

coworkers' job responsibilities and how they compared to hers.[20] Thus, despite the fact that these male employees earned much more than Michael, her complaint simply does not provide enough information for the Court to infer that these individuals held similar roles. *Spencer*, 224 F. Supp. 3d at 457–58 (dismissing Title VII and Equal Pay Act wage discrimination claims where the plaintiff failed to allege "appropriate comparators"). The Court will grant VDOT's motion to dismiss Michael's wage discrimination and unequal pay claims under Title VII and the Equal Pay Act.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant VDOT's motion to dismiss. (ECF No. 3.)

Should the plaintiff wish to appeal this Opinion, written notice of appeal must be filed with the Clerk of Court within thirty (30) days of the date of entry hereof. Failure to file a notice of appeal within that period may result in the loss of the right to appeal.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 18 August 2022
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[20] Though Michael's job responsibilities changed in 2019, the Court evaluates Michael's unequal pay claims as of 2018, when she discovered the pay disparity.

19